# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

PVP ASTON, LLC, RX FREDERICKSBURG INVESTORS L.L.C., AUSBP OWNERCO 15, LLC, AUSBP OWNERCO 3, LLC, AUSBP OWNERCO 10, LLC, AUSBP OWNERCO 13, LLC AUSBP OWNERCO 7, LLC, AUSBP OWNERCO 8, LLC, AUSBP OWNERCO 9, LLC, AUSBP OWNERCO 4 LLC, AUSBP OWNERCO 5, LLC, RA2 FLINT L.L.C., AUSBP OWNERCO 1, LLC, AUSBP OWNERCO 1I, LLC, AUSBP OWNERCO 2, LLC, RA2 MARLINTON L.L.C., RA2 MARYSVILLE L.L.C. RA2 OREM L.L.C., PVP CASTOR LLC, PVP KREWSTOWN, LLC, RA2 STUARTS DRAFT L.L.C., RA2 TOLEDO L.L.C., AUSBP OWNERCO 12 LLC, AUSBP OWNERCO 14, LLC, AUSBP OWNERCO 6, LLC, WEC 98D-26 LLC, WEC 98D-23 LLC, WEC 98D-6 LLC, GCC-RA BEREA LLC, GCC-RA HODGENVILLE, LLC, GCC-RA BARDSTOWN, LLC, GCC-RA CANE RUN, LLC, GCC-RA ORANGEVALE LLC and GCC-RA PARADISE, LLC, each a Delaware or Texas limited liability company,

        Plaintiffs,

    v.

FINANCIAL STRUCTURES LIMITED, a company organized under the laws of Bermuda, and AMHERST RA-357 LLC, ASTON RA-357 LLC, BALTIMORE RA-357 LLC, BATTLE CREEK RA-357 LLC, BISHOP RA-357 LLC, WEST FAIRVIEW

C.A. No. N21C-09-095 AML CCLD

JURY TRIAL DEMANDED

BOISE RA-357 LLC, WEST OVERLAND BOISE RA-357 LLC, BROADVIEW HEIGHTS RA-357 LLC, BROOKPARK RA-357 LLC, CASTOR PHILADELPHIA RA-357 LLC, FLINT RA-357 LLC, GOUVERNEUR RA-357 LLC, HINES RA-357 LLC, KREWSTOWN PHILADELPHIA RA-357 LLC, LORAIN RA-357 LLC, MARLINTON RA-357 LLC, MARYSVILLE RA-357 LLC, MUSKEGON RA-357 LLC, OREM RA-357 LLC, STUARTS DRAFT RA-357 LLC, TOLEDO RA-357 LLC, TROY RA-357 LLC, WAYNESBORO RA-357 LLC, WILLARD RA-357 LLC, BLYTHE RA-320 LLC, CLAREMONT RA-320 LLC, IRONTON RA-320 LLC, FREDERICKSBURG RA-100 LLC, BEREA RA-379 LLC, HODGENVILLE RA-379 LLC, LOUISVILLE-BARDSTOWN RA-379 LLC, LOUISVILLE-CANE RUN RA-379 LLC, ORANGEVALE RA-379 LLC, and PARADISE RA-379 LLC, each a Delaware limited liability company,

Defendants.

**Submitted: December 29, 2022**
**Decided:  March 31, 2023**


## MEMORANDUM OPINION

**Upon Defendants' Motion to Dismiss: GRANTED**.

**Upon Plaintiffs' Motion for Partial Summary Judgment: DENIED AS MOOT.**

2

Christopher P. Simon, Esq. and Michael L. Vild, Esq. of CROSS & SIMON, LLC, Wilmington, Delaware, *Attorneys for Plaintiffs*.

Michael W. Teichman, Esq., Kashif I. Chowdhry, Esq., and Kyle F. Dunkle, Esq. of PARKOWSKI, GUERKE & SWAYZE, P.A., Wilmington, Delaware; Jeffrey D. Brooks, Esq. and Tanisha L. Massie, Esq. of MORRISON COHEN LLP, New York, New York, *Attorneys for Defendants*.

**LEGROW, J.**

The plaintiffs in this action are a group of special-purpose entities that acquired various commercial properties and funded those acquisitions with loans. The loans required the plaintiffs, as borrowers, to obtain residual value insurance policies guaranteeing payment of the outstanding loan to the lenders if the borrowers did not satisfy the loan at maturity. The defendants are the insurers under those policies and related entities.

At the end of the loans' terms, the plaintiffs did not pay the balloon payment, and the defendants therefore paid the lenders the insured value. In exchange for those payments, the lenders assigned the loans and related documents to the defendants. The insurance policies likewise required the borrowers to transfer all title and ownership interest in the properties to the defendants, but the plaintiffs refused to do so. Instead, they took the position that the insurers and lenders breached the parties' agreement or the parties' agreement was otherwise unenforceable.

Litigation ensued between the parties in various jurisdictions. While this case was pending, courts in Michigan and Idaho issued decisions expressly contrary to the claims the plaintiffs seek to maintain in this case. The insurers therefore moved to dismiss this action. Plaintiffs, on the other hand, maintain they are entitled to partial summary judgment as to their declaratory judgment claim. The question that ultimately is dispositive for purposes of the pending motions is whether the collateral estoppel doctrine bars the plaintiffs from relitigating the issues already decided in

Michigan and Idaho. Because the collateral estoppel doctrine applies, and the plaintiffs are bound by the adverse decisions in the other jurisdictions, the plaintiffs' amended complaint must be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from the amended complaint and the documents it incorporates by reference. This dispute arises out of sale and lease back transactions between an insurance company, its designees, and limited liability companies that own properties operated as Rite-Aid pharmacies.

### A. The Parties and the Loan Purchases

Plaintiffs (collectively, "Plaintiffs" or each, a "Borrower") are thirty-four special-purpose entities that obtained commercial loans (each, a "Loan") from several lenders or agents of lenders (each, a "Lender") to finance the sale and leaseback of properties formerly owned by Rite-Aid drugstores (each, a "Property").[1] The Loans were evidenced and secured by a mortgage, note, and related instruments for each Property (the "Loan Documents").[2] Each Loan required a considerable "balloon" payment when the Loan matured in 2020 or 2021.[3]

---

[1] Amended Complaint (hereinafter "Am. Compl.") ¶ 44.
[2] *Id.* ¶ 2.
[3] *Id.* ¶ 66.

Defendants are Financial Structures Limited ("FSL") and its special-purpose subsidiaries.[4]

## B. FSL's RVI Policies

The Loan Documents required Plaintiffs to obtain Residual Value Insurance ("RVI") from FSL to insure the balloon payment for each Loan.[5] Each RVI policy included an Insured Covenants Agreement ("ICA") that contained terms establishing the parties' rights and obligations if FSL made a payment under the policy.[6] Under the ICA, if FSL made a payment to the Lender, the Borrower was required to deed the Property to FSL, thereby forfeiting any equity in the Property.[7] Each RVI policy stated that if a Borrower defaulted on its Loan, FSL would pay the lender the "Insured Value" set out in the policy declarations, which was an amount equal to the

---

[4] Each Defendant other than FSL is a Delaware limited liability company that received an assignment of the Loan Documents relating to a particular Property from a Lender after the Lender was paid in full by FSL for all amounts of the Loan. Defendants are Amherst RA-357 LLC, Aston RA-357 LLC, Baltimore RA-357 LLC, Battle Creek RA-357 LLC, Bishop RA-357 LLC, West Fairview Boise RA357 LLC, West Overland Boise RA-357 LLC, Broadview Heights RA-357 LLC, Brookpark RA-357 LLC, Castor Philadelphia RA-357 LLC, Flint RA-357 LLC, Hines RA-357 LLC, Krewstown Philadelphia RA-357 LLC, Muskegon RA-357 LLC, Troy RA-357 LLC, Waynesboro RA-357 LLC, Willard RA-357 LLC, Blythe RA-320 LLC, Claremont RA-320 LLC, Fredericksburg RA-100 LLC, Berea RA379 LLC, Hodgenville RA-379 LLC, Louisville-Bardstown RA-379 LLC, Louisville-Cane Run RA-379 LLC, Orangevale RA-379 LLC, and Paradise RA-379 LLC. Eight of the named defendants have been dissolved and no longer exist as legal entities. Those eight entities were Gouverneur RA-357 LLC, Lorain RA-357 LLC, Marlinton RA-357 LLC, Marysville RA-357 LLC, Orem RA-357 LLC, Stuarts Draft RA-357 LLC, Toledo RA-357 LLC, and Ironton RA-320 LLC. *Id.* ¶¶ 45-46.
[5] *Id.* ¶¶ 3-5, 78-79.
[6] *Id.* ¶ 7.
[7] *Id.* ¶ 98.

3

"balloon" payment owed on that particular Loan.[8] Upon making that payment, FSL would be subrogated to the Lender's rights against the Borrower, and the Lender would assign the Loan Documents to FSL or its designee.[9]

## C. Conflict at Loan Maturation

All the Loans matured during the Covid-19 pandemic at a time when turmoil in the financial markets made refinancing the Loans a challenge. Plaintiffs ultimately were unable to make the necessary balloon payments at maturity.[10] After each Borrower defaulted on their Loan, the Lender made claims to FSL under the applicable RVI policy associated with that Loan.[11] FSL or an FSL nominee was required to pay each Lender all outstanding amounts due on the Loans.[12] The RVI policy obligated FSL to make those payments within a matter of days;[13] FSL and the Lenders ultimately entered into agreements (each, an "Extension Agreement") under which FSL paid an amount greater than the Insured Value to each Lender in exchange for an extension of the payment deadline.[14] Eventually, FSL made the payments to each Lender,[15] and, upon receipt of each payment, the applicable Lender

---

[8] *Id.* ¶¶ 78-79; Brooks-Decl. Exhibit 2, RVI Policy Art. V.
[9] *See id.* ¶ 21.
[10] *Id.* ¶¶ 19-20, 67.
[11] *Id.* ¶ 20.
[12] *Id.* ¶ 21.
[13] *Id.* ¶ 22.
[14] *Id.* ¶ 23.
[15] *Id.* ¶ 27.

4

assigned the Loan Documents for each Loan to FSL or one of the Assignee Defendants.[16]

Each Policy contained an option that allowed FSL to purchase a Loan instead of paying it off in the event FSL paid a claim to a Lender (the "Loan Purchase Option").[17] In Plaintiffs' view, this "option" was in fact FSL's only choice if it wanted to be assigned the Loan Documents. In other words, Plaintiffs maintain FSL only could obtain an assignment of the Loan Documents if it exercised the Loan Purchase Option.[18] FSL did not exercise the Loan Purchase Option and from Plaintiffs' perspective, under the applicable Policy, when FSL makes a claim payment without exercising the Loan Purchase Option, the Loan is satisfied.[19] Plaintiffs allege FSL's receipt and attempted enforcement of the Loan Document therefore was improper.[20]

Plaintiffs are of the view that FSL also sought to retain all premiums and any amount it funded for claims under the Policies and all the equity it accrued in the Properties for the twenty-two years Borrowers had owned them.[21] Although each ICA also required each Borrower to deliver a deed to its Property to FSL or its

---

[16] *See id.* ¶ 28.
[17] *Id.* ¶ 29.
[18] *Id.* ¶ 30.
[19] *Id.* ¶¶ 31-32, 119-123.
[20] *Id.* ¶¶ 34-36.
[21] *Id.* ¶ 97.

successors if FSL made a payment to the Lender,[22] Borrowers refused to deed their Properties to FSL because they did not believe the ICAs were enforceable in accordance with their terms and Borrowers received no consideration from FSL for the ICAs' execution and delivery.[23]

## D. Relevant Contractual Language

The Loan Documents were assigned to FSL under the provisions of Article V(a) of each Policy and Section 8 of the Additional Named Insured Endorsement ("ANIE"), which was incorporated into the policy. Article V(a), titled "Payment of Insured Value," defined FSL's obligation to pay the Insured Value. That article required FSL to pay the "Additional Named Insured," that is, the Lender,[24] the Insured Value if: (i) FSL received a valid claim notice; (ii) the Lender had not received the full payment on the Loan; and (iii) the RVI Policy's terms and conditions were satisfied.[25] That same section confirmed that the Borrower had no

---

[22] *Id.* ¶ 98.
[23] *Id.* ¶¶ 100-101.
[24] The Lenders are the "Additional Named Insured" under the RVI Policy. *See id.* ¶ 10; Defendants U.S. Bank National Association, Wells Fargo Trust Company, N.A., and WF RR3-CMFUN's Motion to Dismiss ("U.S. Bank Motion") at 1 (D.I. 34); *see also id.*, Ex. C RVI Policy art. II(1).
[25] *Id.*, Ex. A RVI Policy art. V(a). Article V(a) states in relevant part:

> (a) [FSL] will pay to the [Lender] an amount equal to the Insured Value, if: (i) a valid Notice of Claim has been given; (ii) the [Lender] shall not have received payment in full of all amounts owing under the Loan; and (iii) all of the terms and conditions of this [RVI] Policy have been satisfied. [FSL]'s obligations hereunder are limited to making payment to the [Lender] in accordance with the terms hereof and the Additional Named Insured Endorsement, or, at [FSL]'s option, in accordance with [Article] (V)(d) below, and [FSL] shall have no liability to the

6

"ownership or other rights" to the RVI Policy's proceeds.[26] Article V provided that the Policy's coverage terminated upon payment of the Insured Value or exercise of FSL's Purchase option contained in Article V(d).[27]

Subsection (d) established an alternative to payment of the Insured Value under subsection (a). Specifically, if FSL was obligated to pay the Insured Value, FSL had the option "in its sole discretion, in lieu of complying with Article I and Article V," to purchase the Loan from the Lender for the total amounts payable under the Loan (the "Loan Purchase Option"). Article V(d) described the Loan Purchase Option as follows:

> (d) In the event that [FSL] is obligated in accordance with the terms and conditions of this [RVI] Policy to make payment to the [Lender], on the Termination Date (and at any time thereafter) [FSL] shall have the option in its sole discretion, in lieu of complying with Article I and Article V of this [RVI] Policy, to purchase the Loan from the [Lender] for a purchase price equal to all amounts payable under the Loan, but in no event greater than the Insured Value. [FSL] may exercise such option by giving written notice to the Insured and the [Lender] within the time period provided in Article V(c) hereof. If [FSL] exercises such option, the [Lender] will assign the Loan and all documents evidencing or securing the Loan to [FSL], without recourse, in accordance with the provisions of Section 8 of the Additional Named Insured Endorsement. Upon completion of such transfer and payment by [FSL] as provided herein, any and all liability of [FSL] under the [RVI] Policy shall

---

Insured except to make payment to the [Lender] in accordance with this [RVI] Policy.
*See id.*, Ex. A RVI Policy art. V(a).

[26] *See id.* ("In no event will the Insured have any ownership interest or other rights with respect to the proceeds of this Policy.").

[27] *See* Am. Compl., Ex. A RVI Policy art. V(b). Article V(b) states: "Upon payment of the Insured Value under paragraph (a) above or paragraph (d) below, all coverage provided by this [RVI] Policy shall be terminated." *See id.*, Ex. A RVI Policy art. V(b).

7

terminate. In any event, if the Loan is not outstanding on the Termination Date, any and all liability of [FSL] under the [RVI] Policy shall terminate.[28]

Each RVI Policy is subject to the ANIE. Plaintiffs ascribe case-dispositive significance to the fact that the Loan Purchase Option expressly references Section 8 of the ANIE, which is titled "Assignment of Loan Documents in Accordance with Requirements of [RVI] Policy."[29] Plaintiffs point out that Article V(a), which was the provision under which FSL made payments in this case, does not reference Section 8 of the ANIE. Section 8 is the assignment provision, and it establishes the Lenders' obligation to assign the Loan Documents under the RVI Policy. The first sentence of Section 8, however, expressly refers to the Lenders' obligation to assign the Loan Documents upon payment of the "Insured Value," which is what Article V(a) requires:

> Upon the payment by [FSL] of the Insured Value pursuant hereto, the [Lender] agrees to promptly assign to [FSL] (or its designee), without recourse, the Note, the Mortgage and all other documents relating to the Loan ("Loan Documents", including without limitation the rights of the [Lender] under any mortgage title insurance policies, to the extent assignable) or, in the event the [Lender] (or its Affiliate) has acquired title to the Property prior to the Termination Date, the [Lender], at the option of [FSL] shall also transfer good and marketable title to the Property to [FSL], subject to no mortgages, deeds of trust, liens, easements, covenants, conditions, restrictions, leases or other encumbrances other than the permitted title matters identified on <u>Schedule B</u> attached hereto and made a part hereof or which do not have a material, adverse effect on the value of the Property as of the

---

[28] *Id.*, Ex. A RVI Policy art. V(d).
[29] *Id.*, Ex. A ANIE § 8 (underlining in original).

Termination Date.  Notwithstanding the foregoing, the [Lender] shall not be required to assign any claim it has to rent payable during the terms of the Lease.[30]

Each RVI Policy also included an Insured Covenants Agreement ("ICA"). Section 4 of the ICA, titled "Transfer of Title," further confirms the Borrowers are obligated to deliver the Property's Deed to FSL under Article V of the RVI Policy:

> (a) In the event that FSL makes payment for a Claim under Articles I and V of the [RVI] Policy, the Owner shall cause the deed to the Property to be immediately delivered to FSL, without payment of additional consideration by FSL.  Owner hereby acknowledges that payment by FSL under the [RVI] Policy is the equivalent of a purchase of the Property by FSL for an amount equal to the amount paid under the [RVI] Policy and used in satisfying all or part of Owner's obligations under the Note, and that such payment constitutes full and fair consideration for the transfer of title to the Property to FSL.
>
> (b) At the time of such transfer of title to the Property, Owner agrees to comply with all of the terms and conditions of, and to execute all documents referred to in, the Contract Provisions Exhibit, attached hereto as Exhibit B.[31]

Each RVI Policy also had an inspection and appraisal clause. Section IV, titled "Inspection and Appraisal," stated FSL was required to perform an appraisal and notify the Borrower:

> During the period beginning twelve months and ending five months prior to the Termination Date, [FSL] will perform an Inspection and an Appraisal of the Property and will promptly notify the [Borrower] and the Additional Named Insured of the results thereof, including without limitation and any determination by the Inspector and the Appraiser that

---

[30] *Id.* (underlining in original).
[31] *Id.*, Ex. A ICA § 4.

9

the Property is not in compliance with the Property Return Conditions.[32]

## E. Procedural History

Plaintiffs filed their original Complaint in this action on September 13, 2021.[33] At the time, one of the named plaintiffs, ACA FSL Holdingco, LLC, purported to be the assignee of several of the Borrowers, notwithstanding a clause in the Policies stating any attempted assignment of rights under the Policy would be void *ab initio*.[34] On November 3, 2021, Defendants moved to dismiss Plaintiff ACA FSL Holdingco, LLC's claims, and filed an Answer to the other plaintiffs' claims, along with a Counterclaim against all Plaintiffs.[35] On May 31, 2022, the Court dismissed ACA FSL Holdingco, LLC from the case for lack of standing.[36] Plaintiffs then filed the Amended Complaint on July 25, 2022, naming an additional 31 original Borrower entities as new plaintiffs alongside the three original Plaintiff Borrower entities.[37]

Plaintiffs also filed a separate lawsuit in this Court against the Lenders (the "Lenders Action"). The plaintiffs in the Lenders Action filed claims for declaratory

---

[32] *Id.,* Ex. A RVI Policy art. IV.
[33] Defs.' Opening Br. in Support of Defendants' Motion to Dismiss the Amended Complaint (hereinafter "Defs.' Op. Br.") at 3.
[34] *Id.* at 3.
[35] *Id.*
[36] *PVP Aston, LLC, et al. v. Fin. Structures Ltd, et al.*, 2022 WL 1772247, at *16 (Del. Super. May 31, 2022).
[37] Defs.' Op. Br. at 3.

relief, breach of contract, and violation of state mortgage statutes.[38] The defendants moved to dismiss the amended complaint, and the Court granted that motion.[39]

### 1. Filings in other Courts

This litigation is not the only dispute between various Borrowers and FSL, the Lenders, and their affiliates. In addition to the two actions pending in Delaware, litigation has arisen in several states where the subject properties are located, as FSL, its nominees, or third-party purchasers have asserted ownership and possession rights in the properties. Importantly for purposes of Defendants' motion to dismiss, decisions in two of those states address the same claims and legal theories Plaintiffs seek to advance in this case. Specifically, during the period between the filing of Plaintiffs' initial Complaint and their Amended Complaint, courts in Michigan and Idaho issued decisions that rejected the theories and contractual constructions Plaintiffs advance here.[40] Defendants have moved to dismiss the Amended Complaint on the basis of those decisions.

### i. Michigan Action

In August 2021, one of the Borrowers, RA2 Troy LLC (the "Michigan Borrower"), filed a claim in the Michigan Circuit Court for Oakland County relating

---

[38] *PVP Aston LLC, et al. v. U.S. Bank Nat'l Assoc., et al.*, 2023 WL 525059 (Del. Super. Jan. 24, 2023).

[39] *Id.*

[40] Additionally, in the time since the parties argued the pending motions, this Court issued its decision in Plaintiffs' case against the Lenders. That decision also interprets the Loan Documents and RVI Policy in a way fundamentally at odds with Plaintiffs' claims in this case. *See id.*

11

to a Troy, Michigan Property. The Michigan Borrower named as defendants the entities to which FSL and its affiliates had assigned the Loan and the ICA.[41] Neither FSL nor any of its other affiliates was a party to the Michigan litigation.[42] On April 28, 2022, the Michigan Court granted summary judgment to the defendants on all claims.[43] That court rejected the Michigan Borrower's argument that the parties intended FSL's claim payment to the Lender to pay off the loan balance, holding that "contrary to Plaintiff's argument, Article V(a) [of the RVI Policy] does not state that if a claim is made, the Insurer's payment to the Lender will be used to pay off the loan."[44] The Michigan Court also rejected the Borrower's arguments that it was not bound by the ANIE[45] or that Section 8 of the ANIE only applied when FSL exercised the Loan Purchase Option under Article V(d) of the Policies.[46] Similarly, that court was not persuaded by the Michigan Borrower's arguments that the ICA is unenforceable because "it clogs the equity of redemption" and that the parties intended the Insurer's right to the Loan's assignment to be conditioned on the

---

[41] *RA2 Troy LLC v. FI 135 Troy, LLC, et ano.,* No. 2021-189427-CB (Mich. Cir. Ct. Oakland Cnty. 2022), Defs.' Op. Br. Ex. 4.
[42] *Id.*
[43] *Id.*, Ex. 5.
[44] *Id.*
[45] *Id.*
[46]*Id.* at *16-17.

appraisal's performance.[47] The Michigan Borrower moved for reconsideration of the April 28, 2022 decision, but the court denied that motion.[48]

### ii. The Idaho Action

In May 2021, an assignee under the ICA, TJV Associates LLC, brought a claim against RA2 BoiseOverland LLC and RA2 Boise-Fairview LLC (the 'Idaho Borrowers") in the District Court of the Fourth Judicial District of the State of Idaho.[49] TJV Associates LLC sought specific performance against the two borrower defendants after they failed to transfer title to the properties to the plaintiff as required by the ICAs.[50] In August 2021, the Idaho Borrowers filed counterclaims against TJV Associates LLC and third-party claims against several entities to which FSL's affiliates assigned the Loan Documents.[51] Neither FSL nor any of its affiliates was a party to the Idaho litigation.[52] On July 12, 2022, the Idaho Court granted summary judgment to TJV Associates LLC and 487 Morris Associates, LLC on all claims and counterclaims. The Idaho Court held the ICA was enforceable and rejected the Idaho Borrowers' argument that the ICA impermissibly clogged the

---

[47] *Id.* at *18-21, 23-25.
[48] *Id.* at *16-17, Ex. 6.
[49] Brooks-Decl. ¶ 11.
[50] *Id.*
[51] The parties are 487 Morris Associates, LLC, West Fairview Boise RA 357 LLC, and West Overland Boise RA 357 LLC. *See id.* ¶ 12.
[52] *TJV Associates LLC v. RA2 Boise-Overland, LLC, et ano.*, No. CV0l-21-07907 (D. Idaho. Ada Cnty. 2021).

equity of redemption.[53] The Idaho Court also rejected the Idaho Borrowers' arguments that the RVI Policies provided illusory coverage and that the parties intended the Insurer's right to the Loan's assignment to be conditioned on performance of an appraisal on the property.[54]

### 2. Claims in Amended Complaint

Plaintiffs assert four claims in the Amended Complaint. In the first claim, Plaintiffs seek a declaratory judgment.[55] Plaintiffs ask the Court to declare that, "[a]ll the Loan Documents were paid in full and satisfied at the time FSL paid the claim amounts to the Lenders, and neither FSL nor any Assignee Defendant acquired any valid indebtedness or lien or other rights against any Plaintiff or any Property by reason of its purported acquisition of any Loan Document . . . ."[56] Among other requests, Plaintiffs also seek a declaratory judgment that each Policy, excluding the ICA, was a valid contract between FSL and the applicable Plaintiff, enforceable as written.[57]

In Count II of the Amended Complaint, Plaintiffs assert a claim for breach of contract based on FSL's alleged "'sale' of agreements that FSL knows are

---

[53] *TJV Associates LLC v. RA2 Boise-Overland, LLC, et ano.*, No. CV0l-21-07907 at *27-29 (D. Idaho. Ada Cnty. 2021), Defs.' Op. Br. Ex. 9.
[54] *Id.* at *31-33.
[55] Am. Compl. ¶ 140. The full list of declaratory judgments Plaintiffs seek can be found in the Amended Complaint ¶140(a-n).
[56] *Id.* ¶ 140(f).
[57] *Id.* ¶ 140(a).

unenforceable to parties hostile to Plaintiffs."[58] In Count III of the Amended Complaint, Plaintiffs allege FSL's "actions and omissions constitute multiple violations of the anti-subrogation rule, the reasonable expectations doctrine, the illusory coverage doctrine and other [insurance-related] laws and duties."[59] The Amended Complaint also contains a fourth claim for Unjust Enrichment. Plaintiffs plead this claim in the alternative, stating the Court only should find unjust enrichment "[i]n the event that this Court determines there are no enforceable agreements between the parties."[60]

On December 22, 2021, Plaintiffs moved for partial summary judgment. The Court stayed consideration of that motion while it resolved Defendants' motion to dismiss the Original Complaint. After the Court partially dismissed that complaint and Plaintiffs filed their Amended Complaint, Defendants again moved to dismiss. The Court heard oral arguments on both motions on December 9, 2022 before taking them under advisement.

## PARTIES' CONTENTIONS

In Plaintiffs' motion for partial summary judgment, they contend FSL's payments under Article V(a) satisfied the "insured" Loans such that any assignment of the Loan Documents transferred only the Borrowers' obligations that survived the

---

[58] *Id.* ¶ 142.
[59] *Id.* ¶ 146.
[60] *Id.* ¶ 150.

Loans' full payment.[61] In their motion to dismiss, Defendants contend Plaintiffs' amended complaint should be dismissed because their claims are barred by collateral estoppel on the basis of the Michigan and Idaho courts' decisions.[62]

Defendants' collateral estoppel argument carries the day. The Motion to Dismiss must be granted because all Plaintiffs' claims are barred by the collateral estoppel doctrine. Plaintiffs' motion for partial summary judgment therefore is moot.

## ANALYSIS

Under Superior Court Civil Rule 12(b)(6), this Court may grant a motion to dismiss for failure to state a claim if the complaint does not allege sufficient facts that, if proven, would entitle the plaintiff to relief. The governing pleading standard in Delaware to survive a motion to dismiss is reasonable conceivability.[63]

A court only will grant a motion to dismiss under Rule 12(b)(6) when "it appears with reasonable certainty that the plaintiff cannot prevail on any set of facts that can be inferred from the pleadings."[64] Although the court will accord a plaintiff all reasonable inferences that may be drawn from their complaint, it "is not required to accept every strained interpretation of the allegations proposed by the plaintiff."[65]

---

[61] Pls.' Mot. Summ. J. at 7, 32-33.
[62] Defs.' Op. Br. at 17.
[63] *Wild Meadows MHC, LLC v. Weidman*, 250 A.3d 751, 756 (Del. 2021).
[64] *Lefkowitz v. HWF Holdings, LLC,* 2009 WL 3806299, at *4 (Del. Ch. Nov. 13, 2009).
[65] *Malpiede v. Towson*, 780 A.2d, 1075, 1083, (Del. 2001).

Mere conclusory allegations unsupported by facts in the complaint will not be accepted as true.[66]

## I. Plaintiffs' Amended Complaint must be dismissed in its entirety because all Plaintiffs' claims are barred under the collateral estoppel doctrine.

"Collateral estoppel, also known as issue preclusion, refers to the preclusive effect of a judgment on the merits of an issue that was previously litigated or that could have been litigated."[67] Under the collateral estoppel doctrine, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."[68]

### A. A collateral estoppel defense may rest on legal rulings and can be raised and resolved at the pleadings stage.

Plaintiffs first resist Defendants' motion on procedural grounds. Plaintiffs argue the judgments in Michigan and Idaho are outside the pleadings and a court only may consider collateral estoppel at the pleadings stage when the reviewing court also decided the prior action. Numerous cases contradict Plaintiffs' theory,[69]

---

[66] *In re General Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

[67] *Shahin v. Darling*, 606 F. Supp. 2d 525, 545 (D. Del. 2009); *see also Tyndall v. Tyndall*, 238 A.2d 343, 346 (Del. 1968) (collateral estoppel provides repose by preventing re-litigation of an issue previously decided).

[68] *Hercules Inc. v. AIU Ins. Co.*, 783 A.2d 1275, 1278 (Del. 2000) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)).

[69] *Jones v. Reliant Energy Res. Corp.*, 2001 WL 111988, at *8 (Del. Ch. Feb. 2, 2001); *see also In re Career Educ. Corp, Derivative Litig.*, 2007 WL 2875203, at *10-11 (Del. Ch. Sept.28, 2007);

and it is virtually axiomatic that courts may take judicial notice of other courts' decisions at any stage of the proceedings.[70] Delaware courts routinely consider collateral estoppel arguments on motions to dismiss and grant those motions where it is plain from the pleadings and the matters of which the court may take judicial notice that the pending claims are barred by collateral estoppel.[71]

Plaintiffs next contend dismissal based on the Michigan and Idaho decisions is not permitted because collateral estoppel "only applies to findings of fact made by the other tribunal," and neither the Michigan nor Idaho court made factual findings.[72] That argument is baseless; collateral estoppel applies to issues of law in addition to factual findings. Under Delaware law, the collateral estoppel doctrine applies broadly to a court's determinations of "rights, questions, or facts."[73] The Delaware

---

*Yucaipa Am. All. Fund I, LP v. SBDRE LLC*, 2014 WL 5509787, at *11-15 (Del. Ch. Oct. 31, 2014).

[70] *See Aequitas Sols., Inc. v. Anderson*, 2012 WL 2903324, at *3 (Del. Ch. July 10, 2012) (holding that court may take judicial notice of a declaration because it was a pleading filed in a California bankruptcy proceeding); *In re Wheelabrator Tech. Inc. S'holders Litig.*, 1992 WL 212595, at *12 (Del. Ch. Sept. 1, 1992) (holding that "publicly filed documents [including certificate of incorporation] are judicially noticeable on a motion to dismiss.").

[71] *See, e.g., Pyott v. La. Mun. Police Emples.' Ret. Sys.*,74 A.3d 612, 618 (Del. 2013) (reversing Court of Chancery decision that wrongly declined to grant motion to dismiss based on collateral estoppel); *Asbestos Workers Local 42 Pension Fund v. Bammann*, 2015 WL 2455469, at *15 (Del. Ch. May 21,2015) (granting motion to dismiss because collateral estoppel barred plaintiffs' claims); *Adjile, Inc. v. City of Wilmington*, 2010 WL 1379921, at *2 (Del. Super. Mar. 31, 2010) (granting motion to dismiss based on collateral estoppel); *Nelson v. Emerson*, 2008 WL 1961150, at *10 (Del. Ch. May 6, 2008) (granting motion to dismiss based on collateral estoppel where issues were addressed in prior bankruptcy proceedings); *Preffered Fin. Servs. v. A&R Bail Bonds, LLC,* 2020 WL 2952443, at *2 (Del. Super. June 3, 2020) (motion to dismiss granted based on collateral estoppel).

[72] Pls.' Answ. Br. at 15.

[73] *Hercules Inc.*, 783 A.2d at 1276 (emphasis added); *see also In re Columbia Pipeline Grp., Inc.,* 2021 WL 772562, at *59 n.5 (Del. Ch. Mar. 1, 2021).

rule also extends to legal rulings.[74] Moreover, even if Delaware law limited application of the collateral estoppel doctrine to "questions of fact," the restriction would not apply here because "a Delaware court will give the judgments of another state court the same preclusive effect as would a court in that state."[75] The Court must defer to Michigan and Idaho law, and those states also extend collateral estoppel to legal rulings.[76]

**B. Each of the elements of collateral estoppel are met with respect to the claims raised in the Amended Complaint.**

Plaintiffs also resist dismissal on substantive grounds, arguing the Michigan and Idaho decisions do not satisfy the elements of collateral estoppel. When determining whether the collateral estoppel doctrine applies, this Court must determine whether: 1) the issue previously decided is identical to the one presented in the action in question; 2) the prior action has been finally adjudicated on the merits; 3) the party against whom the doctrine is invoked was a party or in privity

---

[74] *Hercules Inc.*, 783 A.2d at 1276; *Columbia Pipeline*, 2021 WL 772562, at *59, n. 5; 606 F. Supp. 525; Restatement (Second) of Judgments § 27.

[75] See *Branson v. Branson*, 2019 WL 193991 at *5 (Del. Jan. 14, 2019) (quotation and citation omitted).

[76] See *Ford Motor Co., v. Centra, Inc. et. al* 2018 WL 9944322, at *4 (holding that collateral estoppel applies to "a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction") (emphasis added) (citing *Hackley v. Hackley*, 395 N.W.2d 906, 910 (Mich. 1986)); *Richardson v. Four Thousand Five Hundred Forty-Three Dollars, U.S. Currency*, 814 P.2d 952, 954 (Ct. App. Idaho 1991) ("Under the judicially-developed doctrine of collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation.") (emphasis added) (citation omitted); *Bach v. Bagley*, 229 P.3d 1146, 1149 (Idaho 2010) (holding that collateral estoppel barred re-litigation of a question of law concerning whether a land transfer was void).

with a party to the prior adjudication; and 4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[77]

### 1. The issues previously decided are identical to the issues presented in this action.

The first question for collateral estoppel purposes is whether the issues are identical. Identicality depends on whether the contentions raised in the second proceeding are necessarily inconsistent with the previously adjudicated issues.[78] Plaintiffs vaguely contend FSL and its nominees were not parties to the Michigan and Idaho decisions, this case concerns FSL's "duties" under the policies, and the pending claims are "unique" to this proceeding. These arguments misunderstand collateral estoppel at both a macro and a micro level.

First, as a preliminary matter, Plaintiffs acknowledge that all the transactions and related documents are the same. Plaintiffs expressly allege each loan transaction that each Borrower entered into with FSL was substantively the same, and was governed by substantially identical agreements.[79] Each Borrower was a special-purpose entity created with reference to a number of sale and lease back transactions by Rite Aid in 1998 and 1999.[80] The operative terms and conditions of all the

---

[77] *Klauder v. Echo/RT Holdings, LLC (In re RayTrans Holdings, Inc.)*, 573 B.R. 121, 130 (Bankr. D. Del. 2017) (citing *Betts v. Townsends, Inc., 765 A.2d 531, 535 (Del. 2000)*).
[78] *Neoplan USA Corp. v. Taylor*, 604 F. Supp. 1540 (D. Del. 1985).
[79] Am. Compl. ¶ 9.
[80] *Id.* ¶¶ 48-54.

Policies, including all ICAs, also were substantially identical.[81] The transactions and agreements at issue here are the same transactions and agreements addressed in the Michigan and Idaho actions. In addition, Plaintiffs' current position that the actions are distinct and involve different claims contradicts Plaintiffs' earlier representations. Plaintiffs previously argued that this Court should consider Plaintiffs' motion for partial summary judgment on an expedited basis because a ruling on that motion would affect the Michigan and Idaho proceedings. The fact that Plaintiffs' claims are raised against different defendants than the defendants named in Michigan does not change the identicality analysis.

Second, an analysis of each claim brought by Plaintiffs in the Amended Complaint establishes that the material issues in this action already have been decided in Michigan and Idaho. In Plaintiffs' claim seeking a declaratory judgment, Plaintiffs request several declarations based on their argument that FSL's payments to the Lenders retired and extinguished Plaintiffs' Loans.[82] Plaintiffs argue FSL's payments under Article V(a) of the Policy, rather than under Article V(d)'s Loan Purchase Option, precluded assignment by the Lenders and resulted instead in satisfaction of the Loans.[83] According to Plaintiffs, therefore, "[a]ny assignment of

---

[81] *Id.* ¶ 9.
[82] *See id.* ¶¶140(b), 140(e), 140(f), 140(i), 140(k), and 140(n).
[83] *Id.* ¶¶ 123-25.

the Loan Documents was an effective transfer of no more than those rights that survive payment in full of the applicable Loan."[84]

The Michigan Borrower raised this same legal theory in the Michigan Action, and that court expressly rejected that contractual construction. The Michigan Court held that "Article V(a) merely states that upon valid notice of a claim, the Insurer will pay the Insured Value to the Additional Named Insured (the Lender). Further, Section 8 of the ANIE unambiguously provides for Assignment of the Mortgage Instruments upon payment of a claim by the Insurer."[85] The Michigan Court found that to the extent Article V(d) of the Policy and Section 8 of the ANIE conflict, the ANIE expressly controls.[86]

The Michigan Court similarly rejected the argument that the borrower there was not bound by the ANIE. The Michigan Court held "the [ANIE] is considered part of the Policy under which the Plaintiff is the named Insured. The Policy specifically defines the 'Policy' as 'this Residual Value Insurance Policy, the Application and the Declarations, the ANIE and any and all other endorsements hereto or thereto.' Moreover, the fact that Plaintiff is not named in the [ANIE] has

---

[84] *Id.* ¶ 33.

[85] *RA2 Troy LLC v. FI 135 Troy, LLC, et ano.,* No. 2021-189427-CB at *13-14 (Mich. Cir. Ct. Oakland Cnty. 2022), Defs.' Op. Br. Ex. 5.

[86] *Id.* at *14-15. This Court recently reached the same conclusion in Plaintiffs' action against the Lenders, holding "[t]he plain language of Article V of the RVI Policy and Section 8 of the ANIE permits only one reasonable interpretation: FSL is entitled to assignment of the Loans upon tendering payments under either Article V(a) or V(d)." *PVP Aston LLC, et al. v. U.S. Bank Nat'l Assoc., et al.*, 2023 WL 525059 at *19 (Del. Super. Jan. 24, 2023).

no effect on its application. The RVI Policy (including the [ANIE]) is for the benefit of the Lender (the Additional Named Insured), which is the only party that can make a claim under the Policy."[87]

Plaintiffs also have argued in this action that "[i]n the case of Section 8 of the ANIE, … there can be no conflict with the 'Policy' because the bold and underlined language at the head of Section 8 makes clear that any assignment to be delivered under that Section must be 'in Accordance with the Requirements of Policy.'"[88] The Michigan Court again rejected that argument, finding Plaintiff's construction was not supported by the language of the Policy and the ANIE. [89]

Plaintiffs further seek a declaration that "Each [ICA] is unenforceable and void."[90] Plaintiffs assert the ICA is unenforceable because it can require forfeiture of "all of the equity that has accrued in the Properties for the 22 years" with "no equity of redemption."[91] Again, the Michigan and Idaho courts rejected those arguments. The Michigan Court held the ICA was fully enforceable, finding "the prohibition against clogging the equitable right to redemption is not implicated in this case" because the ICA "is an agreement between the Insurer and the Plaintiff

---

[87] *RA2 Troy LLC v. FI 135 Troy, LLC, et ano.*, No. 2021-189427-CB at *15 (Mich. Cir. Ct. Oakland Cnty. 2022).
[88] Pls.' Op. Br. Mot. Part Summ. J. Ex. 14 at 25.
[89] *RA2 Troy LLC v. FI 135 Troy, LLC, et ano.*, No. 2021-189427-CB at *16-17 (Mich. Cir. Ct. Oakland Cnty. 2022). This Court agreed in its January 24, 2023, Memorandum Opinion. *See PVP Aston LLC, et al.*, 2023 WL 525059, at *9.
[90] Am. Compl. ¶ 140(j).
[91] *Id.* ¶¶ 97, 104.

and is not an agreement between the Lender (mortgagee) and the Plaintiff (mortgagor)."[92] The Idaho Court similarly held the ICA was enforceable and did not effect a forfeiture.[93] The Idaho Court noted "[t]he ICAs . . . were far from a penalty" but instead were "a crucial part of carefully structured investment strategy . . . under which [the Borrowers] were able to acquire the properties entirely though loans without contributing any equity or capital."[94] In Count IV of the Amended Complaint, Plaintiffs assert a claim for unjust enrichment on the basis that "there are no enforceable agreements between the parties."[95] The Michigan Court already found that the RVI Policy enforceable, and both the Michigan and Idaho courts found the ICA enforceable.[96]

Plaintiffs also seek a declaration that "FSL breached Article IV of each Policy by failing timely or ever to appraise the applicable Property and notify the applicable Plaintiff of the results thereof," and in Count II Plaintiffs assert a breach of contract claim on the basis that FSL's "actions and omissions," including its "'sale' of agreements known by FSL to be unenforceable to parties hostile to Plaintiffs,"

---

[92] *RA2 Troy LLC v. FI 135 Troy, LLC, et ano.,* No. 2021-189427-CB at *21 (Mich. Cir. Ct. Oakland Cnty. 2022).

[93] *TJV Associates LLC v. RA2 Boise-Overland, LLC, et ano.,* No. CV0l-21-07907 at *25-26 (D. Idaho. Ada Cnty. 2021), Ex. 9.

[94] *Id.*

[95] Am. Compl. ¶ 150.

[96] *RA2 Troy LLC v. FI 135 Troy, LLC, et ano.,* No. 2021-189427-CB at *18-21 (Mich. Cir. Ct. Oakland Cnty. 2022); *TJV Associates LLC v. RA2 Boise-Overland, LLC, et ano.,* No. CV0l-21-07907 at *27-29 (D. Idaho. Ada Cnty. 2021).

constitute breaches of each Policy.[97] But the Michigan and Idaho courts already rejected these arguments.

The Michigan and Idaho courts both disagreed with the Borrowers' position that the parties intended the Insurer's right to a Loan assignment to be conditioned on the performance of an appraisal.[98] The Michigan Court also rejected Plaintiff's effort to recover breach of contract damages because the Policy provides that "the [Insurer] shall have no liability to [the Plaintiff] except to make payment to the Additional Insured in accordance with this Policy."[99] The Idaho Court similarly found that the breach of contract claim was futile.[100] In addition, having concluded the ICA was enforceable, the Idaho Court rejected the claim that FSL allegedly sold unenforceable agreements.[101]

In their declaratory judgment claim, Plaintiffs in Count I here also seek a declaration that "the Policies violate the illusory coverage doctrine, the anti-subrogation rule, and the doctrine of reasonable expectations."[102] Plaintiffs raise

---

[97] Am. Compl. ¶¶ 140(l), 142.
[98] *RA2 Troy LLC v. FI 135 Troy, LLC, et ano.,* No. 2021-189427-CB at *23-25 (Mich. Cir. Ct. Oakland Cnty. 2022); *TJV Associates LLC v. RA2 Boise-Overland, LLC, et ano.*, No. CV0l-21-07907 at *33 (D. Idaho. Ada Cnty. 2021).
[99] *RA2 Troy LLC v. FI 135 Troy, LLC, et ano.,* No. 2021-189427-CB at *24-25 (Mich. Cir. Ct. Oakland Cnty. 2022).
[100] *TJV Associates LLC v. RA2 Boise-Overland, LLC, et ano.*, No. CV0l-21-07907 at *33 (D. Idaho. Ada Cnty. 2021).
[101] *Id.*
[102] Am. Compl. ¶ 140(m).

25

these issues again in Count III.[103] But the Idaho District Court rejected the argument that the RVI Policies provide illusory coverage, holding "[t]he extent of coverage under the RVI Policies [was] clearly and unambiguously stated. It was not intended to directly benefit [the Borrowers]."[104] Because the Borrower was not an intended beneficiary of the RVI Policy, the RVI Policy could not violate the anti-subrogation rule or the reasonable expectations doctrine.

In sum, the material issues decided by the Michigan and Idaho courts are identical to the issues raised in the Amended Complaint, and the Michigan and Idaho courts' holdings preclude all Plaintiffs' claims here. Plaintiffs did not attempt to identify any claims raised in the Amended Complaint that were not precluded by the contractual construction and legal rulings adopted in Michigan and Idaho.

## 2. The prior actions have been finally adjudicated on the merits.

Plaintiffs next argue collateral estoppel does not bar the claims in the Amended Complaint because the judgments in Michigan and Idaho have been appealed.[105] That argument is not consistent with settled law. A final judgment in Delaware for purposes of collateral estoppel is the trial court's final act in the case.[106]

---

[103] *Id.* ¶¶ 145-47.
[104] *TJV Associates LLC v. RA2 Boise-Overland, LLC, et ano.*, No. CV0l-21-07907 at *30-31 (D. Idaho. Ada Cnty. 2021).
[105] Plaintiff RA2 Troy L.L.C filed a claim of appeal in the Michigan action on July 7, 2022. The judgment in the Idaho case was entered on July 19, 2022, and the notice of appeal was filed on August 8, 2022.
[106] *Tyson Foods, Inc. v. Aetos Corp. et. al.*, 809, A.2D 575, 579 (Del. 2002).

26

Moreover, under Delaware law, "a Delaware court will give the judgments of another state court the same preclusive effect as would a court in that state."[107] Collateral estoppel law in Idaho and Michigan is substantially the same as the law in Delaware.[108] Delaware follows the majority rule that an appeal does not render a judgment non-final for purposes of *res judicata* or collateral estoppel. Michigan and Idaho law control the question of finality for purposes of this Court's collateral estoppel analysis,[109] and Michigan and Idaho also follow the majority rule.[110]

Plaintiffs acknowledge this case law but nevertheless contend the Court should be "cautious" about applying collateral estoppel because the Michigan and

---

[107] *Branson v. Branson*, 2019 WL 193991, at *5 (citation and internal quotation omitted).

[108] See *Picatti v. Miner*, 449 P.3d 403, 409 (Idaho 2019) (the doctrine of collateral estoppel under Idaho law bars re-litigation of an issue previously decided if "(1) the party against whom the earlier decision was asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation."); *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 844-47 (Mich. 2004) (holding that collateral estoppel applies under Michigan law where an issue essential to the judgment has been actually litigated and determined by a valid and final judgment and the party being bound or its privy had a full and fair opportunity to litigate the issue and also holding that mutuality of estoppel is not required where collateral estoppel is being asserted defensively).

[109] *See* Defs.' Op. Br. at 16; *Branson v. Branson*, 2019 WL 193991, at *5; Yucaipa, 2014 WL 5509787 at *11.

[110] *See Wilson v. Brown*, 2011 WL 55953, at *2 (Del. Super. Jan. 3, 2011) ("Delaware courts have rejected Plaintiffs' argument that the appeal of a judgment renders it non-final for *res judicata*; *Playtex Family Prods., Inc. v. St. Paul Surplus Lines Ins. Co.,* 564 A.2d 681, 684 n.2 (Del. Super. 1989) ("the Courts of this state have indicated that the better view is that judgments on appeal are final for *res judicata* purposes."); *see also Maldonado v. Flynn*, 417 A.2d 378, 384 (Del. Ch. 1980) (the "better view is that a judgment being appealed will support the application of the doctrine of *res judicata*"). *See also Campbell v. Lake Hallowell Homeowners Ass'n*, 852 A.2d 1029, 1039 (Ct. Spec. App. Md. 2004) (noting that the rule "that a pending appeal does not affect the finality of a judgment" is now "followed by a majority of the states," including Delaware).

Idaho courts "glossed over" the contractual issues and their decisions may have been grounded in a concern that the rights of bona fide purchasers could be affected. Plaintiffs do not specify how the Michigan and Idaho courts failed to adequately consider the contractual issues, and those decisions demonstrate the opposite is true. The Michigan Court specifically considered the relevant provisions of the RVI Policy, Articles V(a) and (d), and Section 8 of the ANIE, and ruled that "to the extent that Article V(d) of the Policy and Section 8 of the ANIE conflict, the Endorsement controls."[111]

The Michigan Court also found "there is nothing stating the payment of a claim by the Insurer to the Lender discharges the Loan . . . because such a reading would render the assignment provisions meaningless, and it is well-settled that Courts must 'give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory.'"[112] Plaintiffs point to nothing in the record indicating the parties in Michigan or Idaho were bona fide purchasers or that that fact, if true was dispositive or even essential to those courts' decisions.

---

[111] *RA2 Troy LLC v. FI 135 Troy, LLC, et ano.,* No. 2021-189427-CB at *13-20 (Mich. Cir. Ct. Oakland Cnty. 2022).
[112] *Id.* at 16-17.

### 3. Plaintiffs in this action are in privity with the Borrowers in the Michigan and Idaho actions.

Plaintiffs also resist application of the collateral estoppel doctrine under the theory that "only a small subset of the Plaintiffs in the Amended Complaint were parties in the Michigan and Idaho actions."[113] The analysis is not nearly so simple, and the doctrine is not nearly so limited. Collateral estoppel bars parties to a previous action **and** anyone in privity with that party. "The concept of privity pertains to the relationship between a party to a suit and a person who was not a party but whose interest in the action was such that he will be bound by the final judgment as if he were a party."[114]

The relationship between Plaintiffs and the Borrower parties in Michigan and Idaho permits—and in fact requires—application of the collateral estoppel doctrine. Each Plaintiff in this action is in privity with the Michigan and Idaho Borrowers because Richard Sabella controls each of the Plaintiff entities, including those who were parties in Michigan and Idaho.[115] Courts routinely hold that entities under common control are in privity with each other for collateral estoppel purposes.[116]

---

[113] Pls.' Answ. Br. at 16.

[114] *Michell v. Cook*, 2001 WL 1729136, *2 (Del. Super. Dec. 10, 2021).

[115] *See* Brooks-Decl. ¶¶ 14-22.

[116] Restatement (Second) Judgments §39; *See, e.g., Household Int'l, Inc. v. Westchester Fire Ins Co.*, 286 F. Supp. 2d 369 (D. Del. 2003) ("In a parent-subsidiary context, a parent can be found to have controlled its subsidiary's earlier lawsuit if the subsidiary represented the parent's interests and the parent directed the litigation."); *see also Gulf Power v. FCC*, 669 F.3d 320, 323 (D.C. Cir. 2012) (finding privity between sister entities); *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 19 (1st Cir. 2003) (finding privity regardless of whether the entities were parent and subsidiary or

The record in this case allows this Court to conclude at the motion to dismiss stage that Sabella controls each of the Plaintiff entities.[117] First, in their reply to Defendants' counterclaims, Plaintiffs admitted that each of the Plaintiff entities is controlled, directly or indirectly, by Richard Sabella.[118] Second, in their Original Complaint, Plaintiffs attached a series of assignments in which various Borrower entities purported to assign their claims against FSL. Those assignments also confirm Mr. Sabella's common control.

For example, an assignment dated March 15, 2021, provides that the Michigan and Idaho Borrowers—RA2 Troy LLC, RA2 Boise-Fairview LLC, and RA2 Boise-Overland LLC—are each "a wholly or partially owned, direct or indirect, subsidiary" of RA2 Holdings LLC and are "controlled directly or indirectly by" RA2 Holdings LLC. That assignment also provides RA2 Amherst LLC, RA2 Baltimore-Harford LLC, RA2 Battle Creek LLC, RA2 Bishop LLC, RA2 Broadview Heights LLC, RA2 Brook Park LLC, PVP Castor LLC, RA2 Gouverneur LLC, RA2 Hines LLC, PVP Krewston LLC, RA2 Lorain LLC, and RA2 Muskegon LLC are also each "a wholly or partially owned, direct or indirect, subsidiary" of RA2 Holdings LLC and are each "controlled directly or indirectly by" RA2 Holdings LLC. Mr. Sabella

---

sister corporations); *Cent. Transp., Inc. v. Four Phase Sys., Inc.,* 936 F.2d 256, 260, n. 2 (6th Cir. 1991) (finding privity between three sister corporations owned by a common parent).
[117] Am. Compl. ¶ 44; Ex. B.
[118] Pls.' Reply to Counterclaim ¶ 22.

30

executed the Assignment on behalf of each entity.[119] Each of those entities is a Plaintiff in this action. [120]

Likewise, an assignment dated February 1, 2021, provides that GCC-RA Barea, LLC, GCC-RA Hodgenville, LLC, GCC-RA Bardstown, LLC, GCC-RA Cane Run, LLC, GCC-RA Orangeville LLC, and GCC-RA Paradise, LLC are each "a wholly or partially owned, direct or indirect, subsidiary of" Allerand Realty Holdings, LLC and are each "controlled directly or indirectly by" Allerand Realty Holdings, LLC. Mr. Sabella executed the Assignment on behalf of each entity.[121] Again, each of those entities is a Plaintiff in this action.[122]

An assignment dated September 28, 2020, provides that PVP Aston, LLC, RA2 Flint, LLC, RA2 Marlinton LLC, RA2 Marysville, LLC, RA2 Orem, LLC, RA2 Stuarts Draft LLC, and RA2 Toledo, LLC are each "a wholly or partially owned, direct or indirect, subsidiary of" Allerand Realty Holdings, LLC and are each "controlled directly or indirectly by" Allerand Realty Holdings, LLC. Mr. Sabella executed the Assignment on behalf of each entity,[123] and each of those entities is a Plaintiff in this action.[124]

---

[119] Brooks-Decl. ¶17; Ex. 11.
[120] Compl. Ex. B.
[121] Brooks-Decl. ¶17; Ex. 11.
[122] Compl. ¶ 44; Ex. B.
[123] Brooks-Decl. ¶17; Ex. 11.
[124] Am. Compl. ¶ 44; Ex. B.

An assignment dated July 31, 2020, likewise provides that WEC 98D-26 LLC, WEC 98D-23 LLC, and WEC 98D-6 LLC are each "a wholly or partially owned, direct or indirect, subsidiary of" Allerand Realty Holdings, LLC and are each "controlled directly or indirectly by" Allerand Realty Holdings, LLC. Mr. Sabella executed the Assignment on behalf of each entity, and each of those entities is a Plaintiff in this action.[125]

In other words, each of the 34 plaintiffs in this action is directly or indirectly controlled by either RA2 Holdings LLC or Allerand Realty Holdings, LLC. Mr. Sabella manages Allerand Realty Holdings LLC,[126] and he is "the controlling natural person and majority beneficial owner" of RA2 Holdings, LLC.[127] Through his control of Allerand Realty Holdings LLC and RA2 Holdings LLC, Mr. Sabella therefore controls each of the 34 Plaintiffs in this proceeding, including the three Plaintiffs[128] that were parties in the Michigan and Idaho Actions.

This privity question is one the Court may consider at the pleadings stage because all the documents necessary to resolve the inquiry are attached to the pleadings or otherwise subject to judicial notice. The Court may consider the various assignments because those documents were attached to Plaintiffs' original

---

[125] Brooks-Decl. ¶ 21.

[126] *Id.*, Ex. 13. 2022 Foreign Limited Liability Company Annual Report, No. 3927664315CC, filed by the Florida Secretary of State with the Florida Division of Corporations.

[127] *See* Sabella Aff. ¶ 2.

[128] RA2 Troy LLC, RA2 Boise-Fairview LLC, and RA2 Boise-Overland LLC.

complaint.[129] Even after an amended complaint has been filed, the Court may take judicial notice of the exhibits attached to the original complaint.[130] And the Court is permitted to take judicial notice of any "matters that are not subject to reasonable dispute."[131] Delaware Rule of Evidence 201(b)(2) provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[132] Moreover, the court may take such judicial notice "at any stage of the proceeding."[133]

Delaware courts consider publicly filed documents to constitute "sources whose accuracy cannot reasonably be questioned," and they therefore routinely take judicial notice of such documents.[134] "[T]he court also may take

[129] *See Kim v. Coupang*, LLC, 2021 WL 3671136, at *4 (Del. Ch. Aug. 19, 2021) ("In adjudicating a motion to dismiss, the Court may look to documents attached to the complaint"); *In re Gardner Denver, Inc. S'holders Litig*., 2014 WL 715705, at *2 (Del. Ch. Feb. 21, 2014) (On a motion to dismiss, the "universe of facts" that the court may consider include "any documents attached" to the complaint). Under Delaware law, the Court may also consider any facts subject to judicial notice. *See Schuss v. Penfield Partners, L.P.,* 2008 WL 2433842, at *4 (Del. Ch. June 13, 2008) ("… when assessing a motion to dismiss for failure to state a claim, the court may consider … facts subject to judicial notice.")

[130] *See Barnett v. York Cnty.,* 2011 WL 2790467, at *6 (M.D. Pa. June 24, 2011), report & recommendation adopted, 2011 WL 2791320 (M.D. Pa. July 14, 2011) (considering exhibits attached to original, superseded complaint); *Ernst v. Child & Youth Servs. of Chester Cnty*, 108 F.3d 486, 498-99 (3d Cir. 1997) (holding that "the court may take judicial notice of its own records, especially in the same case"); *In re Career Educ. Corp. Deriv. Litig.,* 2007 WL 2875203, at *9 (Del. Ch. Sept. 28, 2007).

[131] *In re Gen. Motors (Hughes) S'holder Litig*., 897 A.2d 162, 169 (Del. 2006).

[132] Del. R. Evid. 201(b)(2).

[133] *Id.* 201(d).

[134] *See In re Gen. Motors (Hughes) S'holder Litig*., 897 A.2d at 169 (affirming trial court's decision granting motion to dismiss in which the trial court took judicial notice of documents publicly filed with the SEC).

judicial notice of publicly filed documents, such as documents publicly filed in litigation pending in other jurisdictions." The Court therefore takes judicial notice of the corporate filing regarding Allerand Realty Holdings LLC that the Florida Secretary of State filed with the Florida Division of Corporations and the Affidavit Mr. Sabella filed in court in Florida. [135]

### 4. The Michigan Plaintiff and Idaho Borrowers had a full and fair opportunity to litigate the issues in those actions.

Finally, it is apparent that the parties had a full and fair opportunity to litigate the issues addressed in the Michigan and Idaho actions.[136] The decisions issued by those courts describe the cases' procedural history and reflect that the parties had the opportunity to fairly present their positions. Those courts fully analyzed and considered the parties' multifaceted arguments.[137] The Michigan Borrower moved for reconsideration of the April 22, 2022 decision but did not argue that it had lacked an opportunity to fully litigate the issues. Rather, it argued the Court erred in its analysis of the law regarding clogging the equity of redemption. The Michigan Court

---

[135] *See Aequitas Sols., Inc.,* 2012 WL 2903324, at *3 (holding that court may take judicial notice of a declaration because it was a pleading filed in a California bankruptcy proceeding); *In re Wheelabrator Tech. Inc. S'holders Litig.*, 1992 WL 212595 at *12 (Del. Ch. Sept. 1, 1992) (holding that "publicly filed documents [including certificate of incorporation] are judicially noticeable on a motion to dismiss.").

[136] *First Nat'l Bank v. A.E. Simone & Co.,* 1998 WL 437147, *3 (Del. Super. May 18, 1998) (holding that a "party has not had a full and fair opportunity if he or she was unable to present critical evidence in the initial proceeding").

[137] *See* Brooks-Decl. Exs. 5, 9.

considered carefully that motion but determined its initial decision was correct.[138] The Michigan and Idaho actions were finally adjudicated on the merits, and RA2 Troy LLC, RA2 Boise-Fairview LLC, and RA2 Boise-Overland LLC participated, through counsel, in the entire case. Accordingly, the final collateral estoppel element is met.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED.** Accordingly, Plaintiffs' Motion for Partial Summary Judgment is **DENIED AS MOOT.**

**IT IS SO ORDERED.**

---

[138] *RA2 Troy LLC v. FI 135 Troy, LLC, et ano.,* No. 2021-189427-CB at \*16-17 (Mich. Cir. Ct. Oakland Cnty. 2022), Defs.' Op. Br. Ex.6.